# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

|  |  |
|---|---|
| Viorel Micula, | ) |
|  | ) |
| Petitioner, | ) |
|  | ) |
| v. | ) Civil No. 1:14-cv-00600 (APM) |
|  | ) |
| The Government of Romania, | ) |
|  | ) |
| Respondent. | ) |

---

## MEMORANDUM OPINION

## I.   INTRODUCTION

Petitioner Viorel Micula has asked this court to confirm an arbitration award entered in his favor against the Government of Romania under the Convention on the Settlement of Investment Disputes between States and Nationals of Other States.  Confirming, or recognizing, that arbitration award would render it an enforceable judgment of this court.  Micula contends that the court should confirm the award *ex parte*—that is, without serving the Government of Romania—under 22 U.S.C. § 1650a, which provides:  "The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."  The question before the court is whether a statute that empowers federal courts to "enforce" an international arbitration award as if it were a final state court judgment permits a federal court, as a precursor to enforcement, to *recognize* or *confirm* such an arbitration award on an *ex parte* basis.

The court concludes that section 1650a does not permit use of such an *ex parte* procedure and therefore denies Micula's petition.  If Micula wishes to have his arbitration award recognized

and enforced in a United States federal court, he must file a plenary action, with proper service on

the Government of Romania under the Foreign Sovereign Immunities Act of 1976.

## II.   BACKGROUND

### A.   The Convention on the Settlement of Investment Disputes between States and Nationals of Other States

The Convention on the Settlement of Investment Disputes between States and Nationals of

Other States ("Convention" or "ICSID Convention") established the International Centre for

Settlement of Investment Disputes ("ICSID").   Convention on the Settlement of Investment

Disputes between States and Nationals of Other States art. 1, *opened for signature* Mar. 28, 1965,

17 U.S.T. 1270 [hereinafter ICSID Convention].   The Convention entered into effect on October

14, 1966, after it had been ratified by 20 countries, including the United States.[1]   *Id.* art. 68; ICSID,

*Contracting States and Measures Taken by Them for the Purpose of the Convention*, at 1-6, ICSID

Doc. ICSID/8-A (Sept. 2014).

The Convention's purpose was to promote economic development and private international

investment by providing a legal framework and procedural mechanism that could be used to resolve

(primarily economic) disputes between private investors and governments.   *Id.* at Preamble;

Sen. Exec. Rep. No. 2, at 1 (1966).   "ICSID has jurisdiction over a dispute where two requirements

are met.   First, there must be an investment-related legal dispute between a state party to the

Convention and a national of another state that is also a party to the treaty.   Second, the parties to

the dispute must consent to ICSID's jurisdiction." *Mobile Cerro Negro, Ltd. v. Bolivarian Republic*

*of Venezuela*, __ F. Supp. 3d __, No. 14 Civ. 8163, 2015 WL 631409, at *3 (S.D.N.Y. Feb. 13,

---

[1] As of September 2014, 150 countries had become Contracting States to the Convention.   ICSID, *Contracting States and Measures Taken by Them for the Purpose of the Convention*, at 1, ICSID Doc. ICSID/8-A (Sept. 2014).

2015).  Where ICSID has jurisdiction, its decisions are final and are subject to review only within

ICSID itself.  *Id.* at *4.

The Convention, however, did not confer upon ICSID the power to enforce its awards.  It left

that function to its contracting states.  Article 54(1) of the Convention provides:

> Each Contracting State shall recognize an award rendered pursuant to this
> Convention as binding and enforce the pecuniary obligations imposed by that award
> within its territories as if it were a final judgment of a court in that State.  A
> Contracting State with a federal constitution may enforce such an award in or
> through its federal courts and may provide that such courts shall treat the award as
> if it were a final judgment of the courts of a constituent state.

ICSID Convention art. 54(1).

The ICSID Convention was not self-executing.  *See Medellin v. Texas*, 552 U.S. 491, 506

(2008) (explaining when a treaty obligation requires legislation to become domestic law).  It thus

required its Contracting States to "take such legislative or other measures as may be necessary for

making the provisions of this Convention effective in its territories."  ICSID Convention art 69.

Congress gave the ICSID Convention domestic effect in the United States by passing the

Convention on the Settlement of Investment Disputes Act of 1966 ("Investment Disputes Act").

*See* Convention on the Settlement of Investment Disputes Act of 1966, Pub. Law 89-532, 80 Stat.

334 (1966) (codified at 22 U.S.C. §§ 1650 and 1650a).  Section 3 of the Investment Disputes Act,

codified at 22 U.S.C. § 1650a, addresses the enforcement of ICSID arbitration awards in the United

States.  It provides in full:

> (a) Treaty rights; enforcement; full faith and credit; nonapplication of Federal
> Arbitration Act
>
> An award of an arbitral tribunal rendered pursuant to chapter IV of the
> convention shall create a right arising under a treaty of the United States.  The
> pecuniary obligations imposed by such an award shall be enforced and shall be
> given the same full faith and credit as if the award were a final judgment of a
> court of general jurisdiction of one of the several States.  The Federal

Arbitration Act (9 U.S.C. 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the convention.

(b)  Jurisdiction; amount in controversy

The district courts of the United States (including the courts enumerated in section 460 of Title 28) shall have exclusive jurisdiction over actions and proceedings under subsection (a) of this section, regardless of the amount in controversy.

22 U.S.C. § 1650a.

### B.    *Micula v. Romania* **Proceedings Before the ICSID Tribunal**

Petitioner Viorel Micula, along with four co-petitioners[2] (collectively, "Claimants"), submitted an arbitration request to ICSID on August 2, 2005.  *Micula v. Romania*, ICSID Case No. ARB/05/20, Award, ¶ 10 (Dec. 11, 2013), ECF No. 1-4.  The ICSID tribunal proceedings began on November 10, 2006.  *Id.* at ¶ 16.  Claimants asserted that they had made investments in certain regions of Romania in reliance on economic incentives instituted by the Romanian government.  *See, e.g.*, *id.* at ¶ 131; *see also* Statement of P. & A. in Supp. of Pet. to Confirm ICSID Arbitration Award and Enter J., ECF No. 1-1 at 3 [hereinafter Pet'r's P. & A.].  When Romania later revoked those incentives, Claimants alleged that they experienced significant financial losses.  *See, e.g.*, *Micula* at ¶¶ 131, 262.   Further, Claimants argued that Romania's actions violated its bilateral investment treaty with Sweden.  *See, e.g.*, *id.* ¶ 131; *see also* Pet'r's P. & A. at 3-4.  In December 2013, the ICSID tribunal ruled for the Claimants, awarding them monetary damages of 376,433,229 Romanian Leu (RON)—the equivalent of 116,317,868 U.S. Dollars—plus interest at the rate of the three-month Romanian Interbank Offer Rate, plus 5%, compounded on a quarterly basis with respect to certain amounts and periods ("the Award").  *Micula* at ¶ 1329; Pet'r's P. & A. at 4;

---

[2] These co-petitioners were Viorel Micula's brother Ioan Micula and three companies that they controlled, S.C. European Food S.A., S.C. Starmill S.R.L., and S.C. Multipack S.R.L.  *Micula v. Romania*, ICSID Case No. ARB/05/20, Award, ¶ 2-7 (Dec. 11, 2013), ECF No. 1-4.

Updated Statement of P. & A. in Supp. of Pet. to Confirm ICSID Arbitration Award and Enter J.,

ECF No. 7-1 at 6 [hereinafter Updated Pet'r's P. & A.].

### C.    Procedural History in this Court

Five months later, on April 11, 2014, Micula filed a petition with this court under 22 U.S.C.

§ 1650a seeking confirmation of the Award on an *ex parte* basis ("Petition").[3]   Pet. to Confirm

ICSID Arbitration Award and Enter J., ECF No. 1 at 1-4.   Micula argued that, because section

1650a is purportedly silent as to the proper procedure for confirming an ICSID award, the court

should "look to the most analogous state law in crafting the procedural mechanism to confirm such

judgments"—here, the District of Columbia Uniform Enforcement of Foreign Judgments Act,

D.C. Code § 15-352.   Pet'r's P. & A. at 8.   Under that statute, the Superior Court for the District of

Columbia is permitted to confirm foreign judgments on an *ex parte* basis.   *See id.* (citing *Nader v.*

*Serody*, 43 A.3d 327, 333 (D.C. 2012)).   Micula also cited a series of cases from the Southern

District of New York in which the courts borrowed New York state procedural rules and confirmed

ICSID awards *ex parte*.   *See id.* (citing cases).

Shortly before Petitioner filed in this court, Romania moved before ICSID to annul the

Award.   Updated Pet'r's P. & A. at 5.   ICSID's Secretary-General granted Romania an initial stay

of enforcement.   *Id*.   After ICSID constituted an *ad hoc* Committee to consider the annulment

request, Romania sought an extension of the stay pending the decision on annulment.   *Id*.   The *ad*

*hoc* Committee granted the stay request on August 7, 2014, but made it contingent upon on

Romania's filing of a written assurance that it would make unconditional, full payment of the Award

---

[3] The other Claimants—Ioan Micula and the Micula brothers' companies—did not formally join in the Petition before this court—at least they were not identified in the case caption or in the body of the Petition as "Petitioners."  However, counsel for Micula stated during a telephonic hearing in this matter that "we do not seek the award to be confirmed only as to our petitioner.  We seek it to be confirmed as to all claimants."  Draft Tr. of Telephone Conference at 10, *Micula v. Gov't of Romania*, No. 14-600 (D.D.C. Apr. 16, 2015) [hereinafter "Draft Tr."].

if the request for annulment was denied.  *Id*.  When Romania did not file the written assurance, the *ad hoc* Committee revoked the stay as of September 7, 2014.  *Id.*  As a result, Petitioner Micula filed an updated petition, which again requested confirmation of the award on an *ex parte* basis, as well as entry of judgment of the award after its conversion into US dollars.  *Id*. at 9-10.

On February 9, 2015, this court, newly assigned to this matter, entered a minute order seeking an update from Micula as to his "efforts to serve the government of Romania."  Min. Order, *Micula v. Gov't of Romania*, No. 14-600 (D.D.C. Feb 9, 2015).  In his response to the court's order, Micula argued that "[a]wards issued by [ICSID] should be confirmed *ex parte* pursuant to the ICSID Convention and applicable U.S. law."  Status Report, ECF No. 9 at 1.  Relying again on decisions from the Southern District of New York, Micula asserted that, "[i]n keeping with the policy goals of the ICSID Convention and its enabling statute, federal courts have routinely confirmed ICSID awards on an *ex parte* basis."  *Id.* at 2 (citing cases).

Although not served with the Petition, Romania informally appeared in this matter on March 17, 2015, when a Romanian government official sent an email to the court which detailed the ongoing ICSID annulment proceedings, noted Romania's efforts to secure a U.S. lawyer, and requested an extension of time in which to file a defense.  Email from Darius-Bogdan Vâlcov, Minister of Public Finance, to the Honorable Judge P. Amit Mehta, United States District Court for the District of Columbia (Mar. 17, 2015), ECF. No 10-1 at 1.  No lawyer, however, entered an appearance on Romania's behalf, and the court never received a formal response to either Micula's original or updated Petition.

Notwithstanding the lack of a formal response from Romania, this court has closely studied the question whether a federal district court has the authority to confirm an ICSID award on an *ex parte* basis under section 1650a.  The court's scrutiny stems from the Supreme Court's admonition

that "[s]ervice of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant," *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999), as well as the rule that, absent proper service, "federal courts lack the power to assert personal jurisdiction over a defendant," *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2010). The court also found it unusual that, in light of international comity concerns, Congress would have granted federal courts the authority to confirm substantial arbitration awards against a foreign government without providing notice through formal service of process.

On April 16, 2015, during a telephonic conference in which Romania participated, the court delivered its opinion orally that section 1650a does not permit *ex parte* confirmation of an ICSID award and denied the Petition. Order, ECF No. 12; Draft Tr. at 12-22. This Memorandum Opinion sets forth the legal analysis supporting the court's decision.

## III.    LEGAL ANALYSIS

### A.    Interpretation of Section 1650a

To determine whether an ICSID award can be confirmed *ex parte* under section 1650a, the court begins, as it must, with the statute's text. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003) (stating that the "starting point" for statutory analysis "is the statutory text"). Courts are to presume that the "words used" in a statute should be given their "ordinary meaning." *Moskal v. United States*, 498 U.S. 103, 108 (1990). When "the words of the statute are unambiguous, the judicial inquiry is complete." *Desert Palace*, 539 U.S. at 98 (internal citations omitted). But if the statutory language is not clear, a court may use contextual analysis to determine the meaning of a statute. "Statutory construction . . . is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the

permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Savings Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988) (internal citations omitted).

Section 1650a provides minimal guidance on how a federal court should convert an ICSID arbitration award into a federal court judgment.  Courts are directed to "enforce" and "give[] the same full faith and credit" to an ICSID award "as if the award were a final judgment of a court of general jurisdiction of one of the several States."  22 U.S.C. § 1650a.  But the statute does not address precisely how a court should go about "enforcing" and "giving full faith and credit" to an ICSID award—whether by complaint, motion, registration, or otherwise.  *See Mobile Cerro Negro*, 2015 WL 631409, at *5 ("The brief text of the enabling statute thus does not specify the procedural mechanism by which an arbitral award is to be converted into a federal judgment."); *see also id.,* at *5 n.9.

Federal district courts are split on how to interpret the limited text of section 1650a; no appellate court has addressed the issue.  Trial courts in the Southern District of New York have routinely recognized ICSID awards on an *ex parte* basis.  *See, e.g., id.; Grenada v. Grynberg*, No. 11 Misc. 45 (S.D.N.Y. Apr. 29, 2011); *Siag v. Arab Republic of Egypt*, No. M-82 (PKC), 2009 WL 1834562 (S.D.N.Y. June 19, 2009); *Enron Corp. & Ponderosa Assets L.P. v. Argentine Republic*, No. M-82 (S.D.N.Y. Nov. 20, 2007); *Sempra Energy Int'l v. Argentine Republic*, No. M-82 (S.D.N.Y. Nov. 14, 2007).  The court in *Mobile Cerro Negro* provided the most comprehensive explanation for this approach.  Remarking that "ICSID awards . . . can and are expected to be *recognized* and *enforced* in national courts," *Mobile Cerro Negro*, 2015 WL 631409, at *4, the court observed that section 1650a was "silent as to the antecedent process by which the award is converted into an enforceable U.S. federal court judgment," *id.* at *7.  Relying on a variety of

sources—previous ICSID enforcement cases; the Rules of Decision Act, 28 U.S.C. § 1652;[4] Federal Rule of Civil Procedure 69(a)(1);[5] and other areas of law which contain gaps in the federal statutory scheme—the court concluded that "there is compelling authority supporting filling this statutory gap by looking . . . to the law of the forum state." *Id*. at *7. Because New York state law permits *ex parte* recognition of a foreign judgment, the court invoked that procedure to recognize the ICSID award. *Id*. at *1, 11.[6]

By contrast, the court in *Continental Casualty Co. v. Argentine Republic*, 893 F. Supp. 2d 747 (E.D. Va. 2012), in the context of addressing a question of venue transfer, rejected any distinction between recognition or confirmation of an ICSID award, on the one hand, and enforcement, on the other, *id*. at 752. The court read section 1650a to provide "only for the enforcement of ICSID awards." *Id*. Focusing on the statutory text that federal courts should "enforce" an ICSID award as they would a final state court judgment, the court observed that "[t]here is no mechanism for the recognition or confirmation by a federal court of a state court judgment. Unlike state courts that have domestication procedures, federal courts have no procedure for the recognition or confirmation of state court judgments." *Id*. at 753. Because federal courts do not recognize or confirm state court judgments, the court reasoned, "Congress in implementing

---

[4] The Rules of Decision Act provides: "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C. § 1652.

[5] Rule 69(a)(1) states that: "A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." FED. R. CIV. P. 69(a)(1).

[6] In a recent decision, Judge Rudolph Contreras of this court concluded that *ex parte* recognition of an ICSID award was appropriate under the ICSID Convention and 22 U.S.C. § 1650a. *Miminco, LLC v. Democratic Republic of the Congo*, No. 14-01987 (RC), 2015 WL 1061555 (Feb. 9, 2015). The reasoning behind Judge Contreras' opinion, however, was different from that invoked in *Mobile Cerro Negro*. Judge Contreras found that recognition of an ICSID award should *not* involve forum state law because "state-law rules governing recognition of foreign judgments have no place in an ICSID enforcement action commencing in *federal* court." *Id*. at *2 n.3. Instead, Judge Contreras reasoned that an *ex parte* proceeding involving a certified copy of an ICSID award was consistent with the terms and purposes of the ICSID Convention, as well as the previous decisions of other courts. *Id*. at *2.

the ICSID Convention provided a system for enforcement of awards, not for the recognition or confirmation of awards." *Id.* at 754-55.  Thus, the court concluded that the only available method for converting an ICSID award into a domestic judgment was through the same method by which a state court judgment could be enforced in federal court—"a suit on the judgment as a debt," or in other words, a plenary proceeding, which would require service on the foreign government.  *Id.* at 754.

This court has considered the competing interpretations of section 1650a and concludes that the court's reading of the statute in *Continental Casualty Co.* is more consistent with its text and structure.  The text of section 1650a expressly requires federal courts to treat ICSID awards in the same manner as "state court judgments."  22 U.S.C. § 1650a.  Notably, the statute uses only the verb "enforce" as it relates to state court judgments; it does not use the verbs "confirm" or "recognize."  That word choice is consistent with the procedural rule that "the proper treatment of a state court judgment by a federal court is not recognition, or registration, but enforcement." *Cont'l Cas. Co.*, 893 F. Supp. 2d at 753 ("In the federal courts, 'a judgment of a state court may be sued on as a cause of action in a federal court having jurisdiction.'") (quoting 50 C.J.S. Judgments § 1364 (2012)).

Further, there is no federal statutory mechanism akin to the Uniform Enforcement of Foreign Judgments Act that enables a federal court to register, recognize or confirm a state court judgment.  *See Atkinson v. Kestell*, 954 F. Supp. 14, 15 (D.D.C. 1997) ("State court judgments cannot be registered in this court"; limiting the federal registration statute, 28 U.S.C. § 1963, to registration only of federal court judgments); *Marbury Law Group, PLLC v. Carl*, 729 F. Supp. 2d 78, 83 (D.D.C. 2010) (finding that the court lacked subject matter jurisdiction to enforce a state court judgment because 28 U.S.C. § 1963 permits registration of only federal court judgments);

*but see GE Betz, Inc. v. Zee Co., Inc.*, 718 F.3d 615, 625 (7th Cir. 2013) (disagreeing with *Marbury Law Group* and permitting confirmation of state court awards under 28 U.S.C. § 1963 if other jurisdictional requirements are satisfied).  Instead, as Professors Wright, Miller, and Cooper have written:  "The most direct consequence of applying the full faith and credit statute is that a federal court must enforce a state court judgment when *an action* is brought for that purpose."  18B CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE §4469, at 79 (2d ed. 2002) (emphasis added).  Because the plain language of the ICSID enabling statute requires arbitral awards and state court judgments to be treated in a parallel manner, it follows that ICSID awards were intended to be *enforced* by *plenary actions*.

This reading is consistent with other parts of section 1650a.  For instance, in subsection (a) of the statute, Congress expressly stated that the "Federal Arbitration Act (9 U.S.C. 1 et seq.) [FAA] shall not apply to enforcement of awards rendered pursuant to the convention."  22 U.S.C. 1650a(a).  Section 9 of the FAA, which Congress enacted *before* 22 U.S.C. 1650a,[7] is entitled "Award of arbitrators; *confirmation*; jurisdiction; procedure" and permits a prevailing party to "confirm" an arbitration award in federal court.  9 U.S.C. § 9 (emphasis added).  Thus, when enacting the ICSID Convention's enabling statute, Congress was keenly aware that domestic arbitration awards could be confirmed, but elected not to use that procedure for ICSID awards.

Requiring an ICSID awardee to file a plenary action also is consistent with subsection (b) of section 1650a.  That subsection provides that federal courts "shall have exclusive jurisdiction over actions and proceedings under subsection (a) of this section, regardless of the amount in controversy."  28 U.S.C. § 1650a(b).  The use of the words "actions" and "proceedings" strongly connotes a congressional intent to domesticate ICSID awards through a plenary action, rather than

---

[7] 9 U.S.C. § 9 entered into law on July 30, 1947.

*ex parte* confirmation or recognition. The Federal Rules of Civil Procedure provide support for this reading of the statute. Rule 1, in effect when section 1650a was enacted, provides that "[t]hese rules govern the procedure in all civil *actions and proceedings* in the United States district courts, except as stated in Rule 81." FED. R. CIV. P. 1 (emphasis added). Rule 2 states that "[t]here is one form of action—the civil action." FED. R. CIV. P. 2. And, under Rules 3 and 4, "civil actions are required to commence by the filing of a complaint, followed by the issuance and service of a summons." *SEC v. Sec. Investor Prot. Corp.*, 842 F. Supp. 2d 321, 325 (D.D.C. 2012). "Congress can expressly provide by statute 'to allow proceedings more summary than the full court trial at common law.'" *Id.* (quoting *N.H. Fire Ins. Co. v. Scanlon*, 362 U.S. 404, 407 (1960)). However, by expressly using the words "actions" and "proceedings" in section 1650a, Congress chose not to allow a summary, *ex parte* process to domesticate an ICSID arbitration award. *Compare id.* at 326 (finding that Congress intended summary proceedings when it provided that the SEC "may apply" for an order of relief).

Although the court finds that the text and structure of section 1650a compel the result here, the enabling statute's legislative history lends additional support to the court's conclusion. Both the House and Senate Reports state that "[i]f *an action* is brought in a U.S. district court to enforce the final judgment of a State court, it is, of course, given full faith and credit in the Federal court. Section 3(a)[8] would give the same status to an arbitral award." H.R. REP. NO. 1741, at 3-4 (1966) (emphasis added); SEN. REP. NO. 1374, App. at 4 (1966) (emphasis added). Further, both reports refer to Section 3(b)[9] as providing a "uniform procedure for *enforcement* of awards rendered pursuant to the [C]onvention." H.R. REP. NO. 1741, at 4 (1966) (emphasis added); SEN. REP. NO. 1374, App. at 4 (1966). Nowhere does either report refer to *ex parte* proceedings or the need for

---

8 "Section 3(a)" refers to 22 U.S.C. 1650a(a), which was originally published as Pub. L. No. 89-532, § 3(a).
9 "Section 3(b)" refers to 22 U.S.C. 1650a(b), which was originally published as Pub. L. No. 89-532, § 3(b).

confirmation or recognition as a precursor to enforcement, even though Congress knew that such mechanism was possible under the FAA.  As with the text of the statute itself, Congress' use of the term "action" in the legislative history, without reference to a process of recognition or confirmation, indicates an intent to use a plenary proceeding to domesticate an ICSID award.

Finally, the court finds later-enacted legislation to be instructive and to further support the court's reading of section 1650a.  *See Ginsburg, Feldman & Bress v. Fed. Energy Admin.*, 591 F.2d 717, 745 (D.C. Cir. 1978) ("[I]t is a well established principle that courts may look to subsequent legislation as an aid in the interpretation of prior legislation dealing with the same or similar subject matter.").  In 1970, only four years after it enacted enabling legislation for the ICSID Convention, Congress passed an enabling statute for another international dispute resolution convention, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Foreign Arbitral Awards Convention").[10]  *See* Act of July 31, 1970, Pub. L. No. 91-368, 84 Stat. 693.  Regarding such arbitral awards, Congress provided that "any party to the arbitration may apply to any court having jurisdiction under this chapter for an order *confirming* the award as against any other party to the arbitration."  9 U.S.C. § 207 (emphasis added).  The Foreign Arbitral Awards Convention enabling statute clearly demonstrates that when Congress wants to permit *ex parte* confirmation of a foreign arbitration award it knows how to do so.  That only four year earlier Congress chose not to include such a process in the ICSID enabling statute is strong evidence that Congress did not intend for parties who had won ICSID awards to *confirm* such awards.  Accordingly, the court concludes that Petitioner Micula must file a plenary action under section 1650a to convert his ICSID award into an enforceable judgment in this court.

---

[10] In delivering its oral ruling, the court mistakenly said that the Foreign Arbitral Awards Convention was enacted *before* the ICSID Convention's enabling statute.  Draft Tr. at 18.  This written opinion corrects that error.

###### B.      No Conflict with the United States' Obligations Under the ICSID Convention

The court's interpretation of section 1650a does not conflict with, or abrogate in any way, the United States' obligations under the ICSID Convention.  *See Owner-Operator Independent Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*, 724 F.3d 230, 234 (D.C. Cir. 2013) ("[C]ourts prefer to avoid such conflicts" "between statutes and treaties"; "Thus, we presume that newly enacted statutes do not automatically abrogate existing treaties.").  To be certain, Article 54 of the ICSID Convention obligates the United States to both "recognize" and "enforce" an ICSID award "as if it were a final judgment of a court in that State." ICSID Convention art. 54.  But the Convention does not obligate its contracting states to adopt any specific method for fulfilling those obligations.  *See generally id.* § 6, arts. 53-55 (articles concerning "Recognition and Enforcement of the Award").   Rather, Article 54(3) contemplates that "the award shall be governed by the laws concerning the execution of judgments in force in the State in whose territories such execution is sought."  *Id.* art. 54(3).  And, in the case of "[a] Contracting State with a federal constitution," Article 54(1) specifies that an award may be enforced "through its federal courts" and that the Contracting State "may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state."  *Id.* art. 54(2).  The ICSID Convention anticipates that a Contracting State with a federal constitution, such as the United States, can elect to treat an ICSID award as a final judgment of a constituent state court.  That is precisely what section 1650a does. Thus, requiring an ICSID award winner to file a plenary action to recognize and enforce the award does not in any way conflict with the United States' obligations under Article 54 of the Convention.

## IV.     CONCLUSION

For the foregoing reasons, the court concludes that Petitioner must file a plenary action, subject to the ordinary requirements of process under the Foreign Service Immunities Act, to

convert its ICSID award against Romania into an enforceable domestic judgment.   Therefore, Petitioner's *ex parte* Motion to Confirm the ICSID Award is denied without prejudice.   A separate order accompanying this Memorandum Opinion was filed on April 16, 2015.  Order, ECF No. 12.


Dated:  May 18, 2015                                         Amit P. Mehta
                                                             United States District Judge